UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Huntington Distribution Finance, Inc.</u>

      v.                                                               Civil No. 23-cv-524-SM-TSM

<u>Outdoor Performance LLC,</u>
<u>and David Martin Dyer</u>

**REPORT AND RECOMMENDATION**

Plaintiff Huntington Distribution Finance, Inc. ("Huntington"), moves for default judgment (doc. no. 22) against defendants Outdoor Performance LLC ("Outdoor Performance") and David Martin Dyer ("Dyer"). Specifically, Huntington moves for a money judgment in the amount of $64,654.27 against Outdoor Performance and Dyer. Huntington also seeks entry of final judgment as to possession of certain collateral subject to the court's prejudgment writ of replevin. <u>See</u> doc. no. 17. For the following reasons, the court recommends that the district judge grant Huntington's motion and enter default judgment against Outdoor Performance and Dyer. The court further recommends that the district judge order that the prejudgment bond posted by Huntington Distribution may be released.

**Background**

Outdoor Performance is an offroad and utility vehicle dealer located in Bristol, New Hampshire. Dyer is an individual who is the sole member of Outdoor Performance. Huntington provides financing – known as "floorplan financing" – for offroad and utility vehicle inventory to dealers like Outdoor Performance. Outdoor Performance, Dyer, and Huntington entered into a floorplan financing agreement in October 2011. The relevant terms are set out by the Security Agreement (doc. no. 1-1), which contains the core terms of the floorplan financing agreement and

was signed by Huntington and Outdoor Performance, and in the Guaranty, which is between Huntington and Dyer (doc. no. 1-4).[1]

I.    Terms of the Security Agreement and Guaranty

In the Security Agreement, Huntington agreed to extend credit (described in the agreement as "advances") to Outdoor Performance for the purchase of inventory.  Doc. no. 1-1 at 1, ¶¶ 1, 2(a)-(c).  In exchange, Outdoor Performance granted Huntington a security interest in, among other items, the financed vehicle inventory and all proceeds related to it.  Id. at 1, ¶ 3(a).  On November 4, 2011, Huntington perfected its interest in the financed inventory by filing a UCC-1 financing statement with the New Hampshire Secretary of State identifying the property subject to its security interest.  Doc. no. 1 ¶ 10; see RSA 382-A:9-310(a) ("Except as otherwise provided . . . a financing statement must be filed to perfect all security interests and agricultural liens.").

The Security Agreement requires Outdoor Performance to pay interest on credit extended to it, as well as late fees for amounts unpaid when due.  Further, the Security Agreement requires Outdoor Performance to pay Huntington for "all reasonable attorneys' fees and legal expenses and other costs and expenses incurred by [Huntington] in connection with . . . enforcing its security interest" in financed vehicles or in connection with any default under the Agreement.  Doc. no. 1-1 at 5, ¶ 20(c).

Under the Security Agreement's terms, a default occurs if Outdoor Performance fails to pay Huntington when a payment becomes due.  Id. at 3, ¶ 10(a).  Credit payments are, as relevant to this case, determined by the date a financed vehicle is sold or is "otherwise not located at"

---

[1] The financing agreements at issue in this case are between Outdoor Performance, Dyer, and "TCF Inventory Finance, Inc.," which is Huntington's previous name.  Doc. no. 1 ¶ 8. Because Huntington stands in TCF Inventory Finance's place, the court substituted the name of Huntington for TCF Inventory Finance's where applicable for ease of reading.

2

Outdoor Performance's main office and principal place of business.² In other words, if Outdoor Performance sells a vehicle that it bought with credit from Huntington, it must repay that credit to Huntington when the vehicle is sold or when the vehicle, for any reason, is no longer "located at" Outdoor Performance's premises. If Outdoor Performance defaults, an acceleration clause in the Security Agreement permits Huntington to demand repayment of all credit that it extended to Outdoor Performance. Doc. no. 1-1 at 4, ¶ 11.

The Security Agreement contains a choice of law provision which selects the law of Illinois, except as to the perfection of Huntington's security interest and effect thereof, which is left to the law that would be applicable in the absence of the choice of law provision. Id. ¶ 16.

Pursuant to the Guaranty, Dyer guaranteed the Security Agreement for Outdoor Performance. Specifically, Dyer agreed to make for Outdoor Performance the "full and punctual payment and performance when due, whether upon demand, at maturity or earlier by reason of acceleration or otherwise . . . ." Doc. no. 1-4 at 1. Dyer also agreed to "pay on demand all costs and expenses, including reasonable attorney's fees, incurred by [Huntington] in enforcing" the Guaranty. Id. Like the Security Agreement, the Guaranty has a choice of law clause selecting the state law of Illinois.

II.     Outdoor Performance's Default Under the Security Agreement

At some point in 2023, Huntington learned that a vehicle it financed was no longer located at Outdoor Performance's premises. Consequently, in October 2023, Huntington sent Outdoor

---

² Specifically, the Security Agreement states that "the amount of any Advance made to finance the acquisition of any" vehicle must be repaid "immediately upon the earlier of . . .the sale, transfer, rental, lease, or other disposition of such item" or when the vehicle is "damaged, lost or destroyed . . . or is otherwise not located at a Permitted Location." Doc. no. 1-1 at 2, ¶ 6(b)(i), (iii). The agreement defines "Permitted Location" as Outdoor Performance's "main office and principal place of business identified after its signature" on the Security Agreement. Id. at 1, ¶ 4(c).

Performance and Dyer a demand letter seeking payment of $22,426.00 for past-due obligations under the Security Agreement and Guaranty. Doc. no. 1 ¶ 16. Neither Outdoor Performance nor Dyer paid the amount. On October 30, 2023, Huntington sent a letter to Outdoor Performance and Dyer notifying them that it was accelerating all amounts due under the Security Agreement, a total of $250,955.44. The letter demanded that Outdoor Performance assemble its collateral (i.e., the vehicles financed by Huntington) and arrange for Huntington to obtain possession of it.

Outdoor Performance made some payments to Huntington, but not enough to pay the entire balance. Id. ¶ 19 ("Borrower made certain payments to HDF, but Defendants failed to remit the full accelerated principal balance in response to the Acceleration Letter, and have still failed to pay for the unit of HDF-financed inventory that is no longer at Borrower's premises."). Outdoor Performance also failed to assemble the collateral and make it available to Huntington to possess. Id. ¶ 20.

In November 2023, Huntington filed the three-count complaint in this case, bringing claims for breach of contract and for a writ of replevin. Count 1 is against Outdoor Performance for breach of the Security Agreement; Count 2 is against Dyer for breach of the Guaranty; and Count 3 is against Outdoor Performance for a writ of replevin, pursuant to RSA 536-A and Federal Rule of Civil Procedure 64, to recover the collateral subject to the Security Agreement. Alongside the complaint, Huntington filed a prejudgment motion for writ of replevin, seeking prejudgment possession of the collateral. Doc. no. 4. Neither Outdoor Performance nor Dyer filed an answer or otherwise appeared in this action after being served process.

In December 2023, without no response from the defendants, the court granted Outdoor Performance's motion for a writ of replevin, and Huntington posted a $315,000.00 bond. The U.S. Marshals executed the writ of replevin and Huntington took possession of the pertinent collateral,

which was identified in the Marshals' return as 36 ATV units from Outdoor Performance's store in Bristol, New Hampshire.  Doc. no. 20 at 1.  Huntington used the collateral, along with certain payments made by Outdoor Performance, to partially offset the amount of Outdoor Performance's debt to Huntington.

On January 31, 2024, the clerk entered defaults against Outdoor Performance and Dyer. Neither defendant appeared in this action at any point.  Huntington mailed a copy of the entry of default to the defendants at their last known addresses.  Huntington now moves for entry of a default judgment against Outdoor Performance and Dyer to recover the remaining amount of the debt, as well as damages, expenses, attorney fees and costs incurred in connection with its efforts to enforce its contractual rights against the defendants.  It also seeks a final judgment regarding the writ of replevin.

**Standard of Review**

A motion for default judgment under Federal Rule of Civil Procedure 55(b)(2) "shares the same standard of review as that of a motion to dismiss for failure to state a claim." Auctus Fund, LLC v. Sauer Energy, Inc., 444 F. Supp. 3d 279, 284 (D. Mass. 2020) (citing Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002)); United States v. Sullender, No. 16-cv-523-LM, 2018 WL 1368040, at *1 (D.N.H. Mar. 16, 2018).  That is, the court looks to the complaint and its well-pleaded factual allegations to determine whether it alleges a cause of action against the defaulting party.  Ramos-Falcon, 301 F.3d at 2; Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992).  The party in default concedes the truth of the complaint's factual allegations.  In re The Home Rests., 285 F.3d 111, 114 (1st Cir. 2002) ("[I]t is precisely the right to contest liability that a party gives up when it declines to participate in the judicial process.").  The court, however, sets aside any legal conclusions.  Auctus Fund, 444 F. Supp. 3d

5

at 285; Nationstar Mortg. LLC v. Kilmer, No. 17-cv-30161-MGM, 2019 WL 458464, at *3 (D. Mass. Jan. 17, 2019). Additionally, when "[f]aced with a motion for default judgment, a district court must exercise sound judicial discretion in determining whether the judgment should be entered." Fin. of Am. Reverse, LLC v. Carmona-Vargas, No. 16-1661 (SEC), 2018 WL 522317, at *1 (D.P.R. Jan. 23, 2018) (internal quotation marks omitted).

## Discussion

In support of its motion for default judgment, Huntington filed declarations from Brian Edge, William Bay, and Jennifer Parent, together with several exhibits.[3] It also submitted an affidavit showing that Dyer is not in military service. See 50 U.S.C. § 3931 (requiring plaintiff to file an affidavit stating whether the defendant is in military service before the court may enter default judgment for the plaintiff). Additionally, Huntington mailed a copy of the motion for default judgment and associated filings to the defendants at their last known addresses.

By its motion, Huntington requests its claims in Counts 1 and 2 be reduced to a judgment against the defendants in the amount of $64,654.27. That amount consists of $3,811.44 in principal under the Security Agreement and $7,097.14 in interest accrued through February 28, 2024. The rest of Huntington's claimed damages are $1,181.00 for posting the bond to support the prejudgment writ of replevin; $14,698.43 in expenses accrued when recovering the collateral; $35,485.50 in attorney fees; and $2,380.76 in expenses. Huntington also asks that Count 3, its claim for a writ of replevin, be reduced to judgment and that its $315,000.00 bond for the prejudgment writ of replevin be released.

---

[3] The affidavits relate to the damages suffered by Huntington. Edge, who is a "Financial Recovery Team Leader" for Huntington, provides evidence relating to the principal and interest owed by defendants as well as the costs that Huntington incurred in executing the writ of replevin. The affidavits of Bay and Parent, who are counsel to Huntington in connection with this matter, relate to Huntington's attorney fees and associated costs in pursuing this lawsuit.

I.   Jurisdiction

Before entering default judgment, the court must confirm both personal jurisdiction over the defendants and subject matter jurisdiction over the action.  E.g., Gagnon v. Gagnon, 621 F. Supp. 3d 229, 231 (D.N.H. 2022).  This court has general personal jurisdiction over Dyer, whose domicile is New Hampshire, and Outdoor Performance, whose principal place of business is New Hampshire.  See, e.g., Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (stating that the "paradigm forum" for the exercise of general personal jurisdiction is, for a corporation, its "place of incorporation" or its "principal place of business" and, for an individual, his "domicile").  As to subject matter jurisdiction, diversity exists under 28 U.S.C. § 1332(a)(1) because Huntington is incorporated in Minnesota and its principal place of business is Illinois, while Dyer and Outdoor Performance[4] are both domiciled in New Hampshire.  See 28 U.S.C. § 1332(c)(1); Bearbones, Inc. v. Peerless Indemnity Ins. Co., 936 F.3d 12, 15 (1st Cir. 2019).  The amount in controversy also exceeds $75,000.  See doc. no. 1 at 9 (claiming damages of at least $205,482.94).

II.   Counts 1 and 2 – Breach of Contract

In Counts 1 and 2, Huntington alleges that Outdoor Performance and Dyer breached their respective contracts.  For Counts 1 and 2, the court applies the substantive law of Illinois because of the Security Agreement's and Guaranty's choice-of-law provisions.[5]  In Illinois, "[t]he elements

---

[4] Outdoor Performance is a limited liability company.  The citizenship of an unincorporated entity like a limited liability company is determined by the citizenship of all its members.  BRT Mgmt. LLC v. Malden Storage LLC, 68 F.4th 691, 693 (1st Cir. 2023).  Outdoor Performance's sole member is Dyer, whose citizenship is New Hampshire.

[5] In a diversity action, the forum state's choice-of-law rules apply.  Equip. E., LLC v. Corbell Dev., LLC, No. 20-cv-274-JD, 2020 WL 5549102, at *3 (D.N.H. Sept. 16, 2020).  "New Hampshire law usually will uphold a contract's selection of a forum's law as long as the contract bears any significant relationship to that jurisdiction."  Id. (quoting Hobin v. Coldwell Banker Residential Affiliates, Inc., 144 N.H. 626, 628 (2000)) (internal quotation marks omitted).  The Security Agreement and Guaranty bear a significant relationship to Illinois because Illinois is Huntington's principal place of business.  In any event, as to the issues addressed by the court in

7

of a breach of contract claim are (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of contract by defendant, and (4) resultant injury to the plaintiff." Zahdan v. Frontline Bus. Enter. Inc., 2024 WL 1222063, at *6, --- N.E.3d --- (Ill. App. Ct. Mar. 22, 2024).  The plaintiff must prove damages to a reasonable degree of certainty. McGrath v. Addy & McGrath Fireworks, Inc., 216 N.E.3d 1060, 1072 (Ill. App. Ct. 2022). Contract provisions for the payment of attorney fees are enforceable under Illinois law, but strictly construed.  Bright Horizons Child. Ctrs., LLC v. Riverway Midwest II, LLC, 931 N.E. 2d 780, 798 (Ill. App. Ct. 2010).  In this context, however, "strictly construed" means that the court must construe the clause "to mean nothing more—but also nothing less—than the letter of the text."  Id. (quoting Erlenbush v. Largent, 819 N.E.2d 1186 (Ill. App. Ct. 2004)).

Huntington's allegations establish that Outdoor Performance and Dyer breached their respective contracts.  Outdoor Performance agreed to repay credit extended to it by Huntington when a vehicle covered by the Security Agreement was sold or otherwise left its premises.  Such a vehicle left Outdoor Performance's premises or was sold, but Outdoor Performance failed to pay Huntington as agreed.  Huntington then invoked the Security Agreement's acceleration clause, and Outdoor Performance again failed to pay.  Outdoor Performance breached the Security Agreement by failing to make these payments to Huntington when they became due.  Likewise, Dyer breached the Guaranty because he failed to pay Outdoor Performance's liabilities under the Security Agreement when Huntington demanded payment under the Guaranty.

---

this Report and Recommendation, there is no material difference between New Hampshire and Illinois law.  See Poland v. Twomey, 156 N.H. 412, 415 (2007) ("A breach of contract occurs when there is a failure without legal excuse[] to perform any promise which forms the whole or part of a contract."); Kelly v. Pine Trial Cottages Condo. Ass'n, No. 2019-0720, 2021 WL 1821893, at *6-*7 (N.H. May 6, 2021) (enforcing contractual attorney fees clause).

As to damages, the Security Agreement spells out that Huntington is entitled to its principal and interest, its reasonable attorney fees and costs, and also its costs in enforcing its security interests. The Guaranty makes Dyer liable for the same. A hearing to determine damages is not required because calculating the judgment amount requires "nothing more than arithmetic—the making of computations which may be figured from the record . . . ." In re Buscone, 61 F.4th 10, 33 (1st Cir. 2023) (quoting HMG Prop. Invr's, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 919 (1st Cir. 1988)); AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 436 (1st Cir. 2015) (observing that evidentiary hearings are an "available tool" but "not a prerequisite" to the determination of a damages award).

The evidence submitted by Huntington establishes that it is owed $3,811.44 in principal and $7,097.14 in interest through February 28, 2024. Doc. no. 24 ¶ 25. The evidence shows that Huntington incurred the following costs in enforcing its security interests under the agreement: $1,181.00 for its writ of replevin bond, and $14,698.43 for obtaining possession of the collateral. Doc. no. 24-1 (invoice for collateral recovery services); doc. no. 24-2 (invoice for replevin bond).

Finally, the evidence demonstrates that Huntington incurred $35,485.50 in attorney fees and $2,380.76 in expenses. To determine whether a claimed amount of attorney fees is reasonable, courts typically apply the lodestar approach. See Robinson v. Point One Toyota, Evanston, 77 N.E.3d 137, 145 (Ill. App. Ct. 2017); accord Valsoft Corp. v. Bacalan, No. 19-cv-672-JL, 2020 WL 9780743, at *4 (D.N.H. Aug. 4, 2020), report & recommendation adopted, 2020 WL 9782530 (Sept. 14, 2020). Under the lodestar approach, the court multiplies a reasonably hourly rate by the number of hours expended on the litigation, less those hours that are excessive, redundant, or unnecessary. Robinson, 77 N.E.3d at 145; Valsoft, 2020 WL 9780743, at *4.

In support of the claim for attorney fees and costs, Huntington submitted affidavits from Jennifer Parent, an attorney with McLane Middleton, and William Bay, an attorney with Thompson Coburn. Doc. nos. 25, 26. Counsel provided a summary of the time they spent on this matter and their hourly rates. Bay, a partner with 40 years of experience, billed at the rate of $385 per hour, which was discounted from the rate he typically charges. Other members of Bay's firm billed at the rates of $385 for an experienced partner, $290 for an associate, and $165 for a paralegal. Parent, a partner at McLane Middleton with 27 years of experience billed at $580 per hour in 2023 and $625 per hour in 2024. Christopher Walsh, an associate with 10 years of experience billed at $420 per hour in 2023 and $455 per hour in 2024. Although the rates of Parent and Walsh are at the high end of those previously approved by this court, all of the rates charged were reasonable. See, e.g., Dowling v. Saint-Gobain Performance Plastics Corp., No. 18-cv-180-JL, 2018 WL 5617547, at *2 (D.N.H. Oct. 30, 2018) (finding, in 2018, that a rate of $525 per hour for an "experienced partner" in New Hampshire was reasonable); Town of Wolfeboro v. Wright-Pierce, Inc., No. 12-cv-130-JD, 2014 WL 12927092, at *5 (D.N.H. Mar. 10, 2014) (finding, in 2014, that a rate of $400 per hour for a partner in Boston, Massachusetts, was reasonable).

Counsel's time entries show that they performed necessary, nonduplicative work. Although the total amount of attorney fees in this case is greater than in similar cases that resulted in default judgment, e.g., Valsoft, 2020 WL 9780743, at *4 (finding a total fee award of $17,726.13 reasonable), Huntington's need to obtain and execute a writ of replevin in order to repossess the subject collateral significantly increased the necessary amount of time expended on the case. Having reviewed counsel's filings – and absent any argument from the defendants – the court finds

that the amount of time spent on the matter was reasonable.[6] Thus, the lodestar figure in this case is the same as the amount billed by counsel. The court finds that amount ($35,485.50) as well as the amount for expenses ($2,380.76) reasonable. Finally, the affidavits and accompanying exhibits also establish that the fees and costs or expenses charged were "in connection with establishing, perfecting, maintaining perfection of, protecting and enforcing [Huntington's] security interest in the Collateral and collecting Indebtedness . . . ." Doc. no. 1-1 at 5, ¶ 20(c).

For all of the foregoing reasons, it is recommended that the district judge enter judgment in Huntington's favor in the amount of $64,654.27, against Outdoor Performance and Dyer jointly and severally. This amount includes interest accrued through February 28, 2024.

III.   Count 3 – Replevin

In Count 3, Huntington sought a writ of replevin, pursuant to RSA 536-A and Federal Rule of Civil Procedure 64, for the purpose of recovering the collateral subject to the Security Agreement from Outdoor Performance.[7] The court granted a prejudgment writ of replevin under RSA 536-A after a hearing at which Dyer and Outdoor Performance failed to appear. Doc. no. 17. The U.S. Marshals executed the writ of replevin and returned the collateral to Outdoor Performance's possession, except for one vehicle whose disposition is unknown and three vehicles for which defendants paid. Given Outdoor Performance's default and consequent concession of

---

[6] The court also confirmed that counsel's arithmetic – the multiplication of each attorney's hourly rate multiplied by the time spent on the matter – is correct.

[7] "A party may recover possession of personal property wrongfully taken or detained by applying to the superior court, or concurrently to a district court where the value of the property is within the jurisdictional amount of a district court, for a writ of replevin in accordance with the provisions of this chapter." RSA 536-A:1. Rule 64(a) states, in relevant part, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."  Replevin is listed among the potential state-law remedies that may be available under Rule 64. Fed. R. Civ. P. 64(b).

the facts in the complaint, which show Outdoor Performance's entitlement to possession, Huntington has established its right to possession of the collateral still subject to the Security Agreement. Because a writ of replevin has already been issued and executed, the court need only enter a final judgment in Huntington's favor.

## Conclusion

For the reasons detailed above, Huntington's motion for default judgment should be granted, and it is recommended that the district judge enter judgment against defendants Outdoor Performance LLC and David Martin Dyer as follows:

- As to Counts 1 and 2, judgment in favor of plaintiff Huntington Distribution Finance Inc., as to defendants Outdoor Performance LLC and David Martin Dyer, jointly and severally, in the amount of $64,654.27.

- As to Count 3, judgment in favor of plaintiff Huntington Distribution Finance Inc. as to defendant Outdoor Performance LLC. The prejudgment bond posted by Huntington Distribution Finance Inc. may be released.

Any objection to this Report and Recommendation on Huntington's motion for default judgment must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The 14-day objection period may be extended upon timely motion. Only those issues properly raised in a written objection are subject to review in the district court and any issues not preserved by a written objection are waived on appeal. Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016) (citations omitted).

Talesha L. Saint-Marc
United States Magistrate Judge

May 2, 2024

cc:   Counsel of Record